OPINION OF THE COURT
Eli Wager, J.
May a State administrative agency, as a matter of practice, compel an individual to institute litigation as a prerequisite to receipt of a statutory benefit, to which he is clearly entitled, without incurring liability for counsel fees under Federal law?
This is the sole remaining issue raised in these two article 78 proceedings which have otherwise been settled by stipulation. The stipulation provides for (1) their consolidation, (2) the withdrawal of the notices of denial of appplication for medical assistance issued by the respondent Commissioner of the Nassau County Department of *517 Social Services dated March 7, 1979, November 16, 1979 and August 18, 1980, as well as the decisions after fair hearings issued by the respondent Commissioner of the New York State Department of Social Services on September 7, 1979 and March 18, 1980 affirming the denials of assistance, (3) a recomputation of petitioner’s eligibility for medical assistance for the period October 1, 1978 through August, 1980, and (4) payment of petitioner’s hospital bills for that period of time in accordance therewith. The stipulation concludes by providing that petitioner’s application for attorney’s fees pursuant to section 1988 of title 42 of the United States Code shall be submitted to the court for determination. The facts follow.
On April 25, 1977, the Appellate Division, Second Department, in Matter of Watkins v Toia (57 AD2d 628, affd 46 NY2d 773), determined that, contrary to the respondents’ interpretation, the word “cost” in that section of the Social Services Law which provides for financial assistance to persons with catastrophic illness (§ 366, subd 2, par [c]) refers to the cost to the patient and not cost to the agency (Medicaid per diem rates). However, subsequent to April 25,1977 and continuing at least until September 19,1980, local agencies continued to compute eligibility on the basis of cost to the agency and the State commissioner continued to affirm such an approach (see, e.g., Matter of Fraction v Blum, 77 AD2d 811; Matter of Orlando v Blum, 74 AD2d 626; Matter of Ciculli v Toia, 63 AD2d 714).
On September 19, 1980 the State commissioner finally issued an administrative directive changing the methodology whereby catastrophic illness assistance will be computed in conformity with the Watkins decision. Prior thereto, the respondents had adopted a policy of conceding the computational error and offering to recompute when an applicant — like the instant petitioner — brought on an article 78 proceeding (see, e.g., Matter of Maletta v D’Elia, Supreme Ct, Nassau County, March 18, 1980, Index No. 8346/79, Niehoff, J.; Matter of Speranza v D’Elia, Supreme Ct, Nassau County, March 20, 1981, Index No. 13259/80, Wager, J.). But, as asserted by petitioner and not denied by the respondents, no such corrected computation was *518 made for those applicants who pursued only administrative remedies and did not seek court review.
Although the settlement in the instant case was clearly motivated by Watkins and thus predicated upon State law (it is not alleged that the Federal statute requires any particular computational formula), petitioner bases his claim to counsel fees upon the ground that the respondents have denied him Medicaid coverage in contravention of the equal protection clause of the Fourteenth Amendment to the United States Constitution and the provision in the Social Security Act which requires that medical assistance be made available to all individuals in equal amount, duration and scope (US Code, tit 42, § 1396a, subd [a], par [10], cl [C], subcl [ii]), thus attempting to bring his claim within the ambit of the Federal civil rights statute.
The Civil Rights Attorney’s Fee Award Act (US Code, tit 42, § 1988) provides in pertinent part that: “In any action or proceeding to enforce a provision of sections *** 1983 *** of this title * * * the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney’s fee as part of the costs.” Section 1983 of title 42 of the United States Code provides that: “Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.”
State courts have concurrent jurisdiction with the Federal courts with respect to section 1983 actions (Maine v Thiboutot, 448 US 1; Young v Toia, 66 AD 2d 377) and counsel fees may be awarded in State court proceedings (Maine v Thiboutot, supra; Matter of Ashley v Curtis, 67 AD2d 828; Matter of Bess v Toia, 66 AD2d 844). In an appropriate case, a prevailing party “ ‘should ordinarily recover an attorney’s fee unless special circumstances would render such an award unjust’” (Christiansburg Garment Co. v EEOC, 434 US 412, 416-417). If a petitioner *519 can be deemed the “prevailing” party, the fact that the proceeding has been settled does not preclude such an award (Maher v Gagne, 448 US 122; Bonnes v Long, 599 F2d 1316; International Soc. for Krishna Consciousness v Andersen, 569 F2d 1027; United Handicapped Federation v Andre, 489 F Supp 1040; Sharrock v Harris, 489 F Supp 913; Young v Kenley, 465 F Supp 1260). Where a proceeding involves both a fee claim (violation of section 1983) and a nonfee claim, it does not matter which claim induced the settlement or which claim would have been successful at trial as long as the fee claim is substantial and arises from the same operative facts as the nonfee claim (see Gagne v Maher, 594 F2d 336, affd 448 US 122, supra).
Similarly, where the action proceeds to trial, counsel fees may be awarded even where relief is premised on nonfee grounds provided the decision could have been premised on a violation of Federal law or the Federal Constitution (see Matter of Holley v Blum, 75 AD2d 998; Matter of McNeil v Shang, 69 AD2d 985). And even in those cases where the courts are reluctant to resolve a constitutional question if a nonconstitutional claim is dispositive, counsel fees may be awarded if the constitutional claim meets the “substantiality” test (Gagne v Maher, 594 F2d 336, supra). A mere erroneous determination by a State agency charged with enforcement of State laws or a violation of a State statute by State officials is not a basis for a section 1983 claim unless there is also a violation of Federal law or the Federal Constitution (see, e.g., Paul v Davis, 424 US 693; Duchesne v Sugarman, 566 F2d 817; Rosenberg v Martin, 478 F2d 520, cert den 414 US 872; Stenson v State of New York, 422 F Supp 38). The Federal claim must, of course, be bona fide (see, e.g., Matter of Bess v Toia, 66 AD2d 844, supra).
The instant petitioner’s allegation that the respondents’ policy constitutes a violation of the equal protection clause appears to be without substance. Although the policy may indeed, as petitioner asserts, create two classes of applicants — those who obtain benefits because they litigate and those who go without — petitioner himself is not a member of the latter class. Because one may not sue under section 1983 of title 42 of the United States Code for *520 deprivation of another’s constitutional rights, petitioner lacks standing to raise the issue (see Javits v Stevens, 382 F Supp 131). Petitioner’s claim that the respondents’ policy violates section 1396a (subd [a], par [10], cl [B], subcl [ii]) of title 42 of the United States Code is also lacking in merit. The section requires equality in the amount, duration and scope of medical assistance made available to different groups of individuals; it does not make reference to persons who have been denied assistance and does not speak to the issue of delay in providing such assistance.
It appears, however, that the petitioner may have a valid and substantial Federal claim premised on both Federal statutory and constitutional grounds, not on the grounds he argues, but upon the ground of unjustifiable administrative delay (see, generally, Goldman, Administrative Delay and Judicial Relief, 66 Mich L Rev 1423; 72 Yale LJ 574). As the Supreme Court noted in Fusari v Steinberg (419 US 379), the length of a period of deprivation of benefits to which a party is entitled by statute may significantly affect both statutory and constitutional questions. The benefits sought in Fusari were unemployment benefits which the statute (US Code, tit 42, § 503) required to be paid “when due” and the delay alleged involved provisions for administrative review of a denial of benefits (the court did not determine whether there was a statutory or constitutional violation, holding instead that intervening changes in State law and procedure required a remand). In California Human Resources Dept. v Java (402 US 121) where relief was sought under the same statute, the delay alleged was the administrative practice of discontinuing benefits whenever an employer appealed, a practice which the court found to be in conflict with the statute’s mandate that compensation be paid “when due” (see, also, Matter of Cisco v Lavine, 72 Misc 2d 1009 [delay in conducting fair hearings on applications for AFDC benefits beyond the 60-day period mandated by Federal as well as State regulations]). Here, the Federal statute (Social Security Act, US Code, tit 42, § 1396a, subd [a], par [8]) requires that a State plan for medical assistance provide, inter alia, that such assistance shall be furnished with “reasonable promptness” to all eligible individuals. Clearly, the procedure *521 followed by the instant respondents (denying assistance to eligible applicants until administrative remedies have been exhausted and an article 78 proceeding commenced) cannot be deemed to furnish assistance with “reasonable promptness”, particularly in the case of the instant petitioner, a cancer patient who first sought assistance in November of 1978 and twice thereafter, who has been through two fair hearings and whose medical bills now amount to something over $10,000. Since section 1988 applies to all types of section 1983 actions including violations of the Social Security Act, petitioner appears to be entitled to counsel fees under section 1988 upon the ground that he had been deprived of a right secured by Federal law (see Maine v Thiboutot, 448 US 1, supra).
It also appears that the deprivation of benefits to which this petitioner is entitled by State statute may constitute a violation of the due process clause of the Fourteenth Amendment. There is precedent for the notion that bureaucratic delay in processing and approving a benefit to which a person is statutorily entitled can amount to a deprivation sufficient to bring the due process clause into play (see Fusari v Steinberg, 419 US 379, supra; Perez v Lavine, 378 F Supp 1390; Nelson v Sugarman, 361 F Supp 1132; cf. Wright v Califano, 587 F2d 345; Black v Beame, 419 F Supp 599, affd 550 F2d 815). In Perez (supra, p 1394), the District Court held that the petitioners’ allegation that “the congestion, confusion, and long delays in the delivery of services that characterize the operation of [welfare] centers deprive them of their welfare benefits without due process of law” stated a substantial constitutional question; similarly, in Nelson, the District Court held, inter alia, that the alleged failure of welfare officials to timely implement fair hearing decisions on the eligibility of new applicants for public assistance violated the due process clause. In Black and in Wright v Califano; however, the courts did not find that the alleged delay violated due process — in Black because the petitioners were not statutorily entitled to the relief they sought and in Wright upon the ground that the delay was neither arbitrary nor the result of other inexcusable circumstances. In contrast, in the instant case the petitioner was deprived of benefits he *522 was statutorily entitled to and the delay was totally arbitrary and without justification; in fact, the administrative decisions were so completely lacking in reasonable justification as to constitute a due process violation in themselves — quite aside from the resulting delay in granting the benefit requested — on the ground that they were arbitrary and capricious (see Canty v Board of Educ., 312 F Supp 254). It appears that the facts alleged present a substantial constitutional question which might in itself entitle petitioner to an award of counsel fees, even in the absence of a statutory violation.
The respondent Blum’s plea that the “drafting of a new administrative directive to reflect both legislative intent and the Court’s opinion in Watkins was no easy task” is no excuse for her continued and almost contumacious misconstruction of the State statute and of her own regulation (18 NYCRR 360.31) for three years subsequent to the Appellate Division’s determination in Matter of Watkins v Toia (57 AD2d 628, supra) and for almost two years after its affirmance. The Court of Appeals’ description in Watkins (46 NY2d 773, supra) of the statute as a “conundrum” merely describes the difficulty the court had in construing it; the construction arrived at is not difficult to apply — at least the respondents appear to have encountered no difficulties upon those occasions when a recomputation was offered in settlement of court proceedings.
Accordingly, the application for counsel fees is granted. See short form order entered simultaneously herewith providing for a hearing on the extent and value of the legal services performed.