In the Matter of COMMUNITY HOSPITAL AT GLEN COVE, as Attorney in Fact for VALENTINE GERING, Petitioner, v JOSEPH A. D'ELIA, as Commissioner of the Nassau County Department of Social Services, et al., Respondents. — Proceeding pursuant to CPLR article 78 to review a determination of respondent State Commissioner of Social Services, dated May 1, 1978, and made after a statutory fair hearing, which affirmed a determination by the local agency to deny an application for medical assistance made by the Community Hospital at Glen Cove, as attorney in fact for, and on behalf of, one Valentine Gering and his deceased wife, Mary Gering. Petition granted, determination annulled, on the law, without costs or disbursements, and matter remitted to respondents for a computation of the amount of medical assistance to be awarded in accordance with the views expressed herein. Mary Gering was admitted to the Community Hospital at Glen Cove on March 1, 1977, where she remained until her discharge on March 26, 1977. She was again admitted to the hospital on April 25, 1977 and remained there until her death on May 26, 1977. Insofar as is here pertinent, the petitioner, as attorney in fact for Mr. Gering, on or about August 12, 1977, applied for medical assistance regarding Mrs. Gering's second hospitalization (so much of that application as sought medical assistance regarding Mrs. Gering's first hospitalization and was denied pursuant to 18 NYCRR 360.16 [c] is not here in issue). That application was denied on the ground that Mr. Gering's "excess income" (see 18 NYCRR 360.5 [d]; 42 CFR 435.732, 435.831), available resources and private hospitalization insurance exceeded the cost of the second hospitalization when calculated at the Medicaid per diem rate for the Glen Cove Hospital. This determination was subsequently affirmed by the State commissioner (following a fair hearing), whereupon the instant article 78 proceeding was commenced. Clearly, the hospital has standing to maintain the instant proceeding (see *Matter of St. Francis Hosp. v D'Elia,* 71 AD2d 110, 114-116, affd 53 NY2d 825). There are two major issues presented. The first question to be decided concerns the propriety of respondents' determination *not* to include as a proper deduction the previously incurred medical expenses of Mrs. Gering's *first* hospitalization when determining Mr. Gering's "excess income" for Medicaid eligibility purposes. We hold that the foregoing was improper. Section 366 (subd 2, par [b]) of the Social Services Law provides in part: "In establishing standards for determining eligibility for and amount of such [medical] assistance, the department shall take into account only such income and resources, in accordance with federal requirements, as are available to the applicant or recipient and as would not be required to be disregarded or set aside for future needs, and there shall be a reasonable evaluation of any such income or resources." Thus, since the Federal regulations mandate that local agencies deduct "incurred medical expenses" from "countable" or excess income in determining Medicaid eligibility (e.g.,· 42 CFR 435.831), we believe that respondents erred in failing to consider the medical bills incurred during Mrs. Gering's initial hospitalization in making the instant determination. Moreover, while it is true that the Federal regulations also provide that a State agency may set "reasonable" limits on the amount and types of incurred medical expenses which will be deducted from income (42 CFR 435.732 [c], 435.831 [c] [2]), we do not believe that it is reasonable to exclude the *unpaid* medical expenses incurred by an applicant during a hospitalization which terminated just one month prior to the onset of the hospitalization for which medical assistance is being requested, merely because said services (1) were rendered more than three months prior to the month in which assistance was requested (18 NYCRR 360.16 [c]) or (2) were unrelated to the services "for which medical assistance is [being] sought." Turning to a consideration of the second issue presented, it remains to be considered whether it was proper for the respondents to evaluate

need by computing the medical expenses incurred during Mrs. Gering's *second* hospitalization at the Medicaid rate rather than the (higher) private patient rate. In our view, this, too, was error. In other contexts (see Social Services Law, § 366, subd 2, par [c]), the courts have recognized that a patient's liability to a hospital is measured by the *actual* charges incurred, and that a low reimbursement or eligibility formula may defeat the intent of the statute to assist persons who have incurred medical expenses which they are unable to afford (see, also, Social Services Law, § 363; *Matter of Ciculli v Toia,* 63 AD2d 714; *Matter of Watkins v Toia,* 57 AD2d 628, affd 46 NY2d 773). We believe that a parallel principle is applicable here. Thus, a patient's (or applicant's) incurred medical expenses for which medical assistance is being sought *must* be considered at the rate at which he and not Medicaid would be charged. While the agency may properly establish the amount which it will reimburse a hospital for services rendered under a medical assistance program, when determining *eligibility* for aid the true cost to the patient is the critical element. We have considered the parties' remaining contentions and find them to be lacking in merit. Lazer, J. P., Mangano, Gulotta and Weinstein, JJ., concur.